UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JAMES T. NELSON,

                Petitioner,

  -against-                                                1:02-CV-1031
                                                                       (LEK)

UNITED STATES OF AMERICA,

                Respondent.

### MEMORANDUM-DECISION AND ORDER[1]

*Pro Se* Petitioner James T. Nelson ("Nelson") moves pursuant to 28 U.S.C. § 2255 to vacate and set aside his judgment or alter his sentence following a conviction for violation of 18 U.S.C. § 922(g), Unlawful Possession of a Firearm by a Convicted Felon.  Pet.'s Motion (Dkt. No. 1); Resp.'s Memo. (Dkt. No. 4) at 3, Ex. 1.  Nelson seeks relief, claiming that (1) counsel was ineffective for preventing Nelson from testifying on his own behalf during trial, (2) counsel was ineffective for failing to raise various arguments to discredit the testimony of witness Richard Benitez ("Benitez"), and (3) the addition of two enhancements applied to his sentence violated his Sixth Amendment right to a jury trial under United States v. Booker, 125 S.Ct. 738 (2005).  Pet.'s Motion (Dkt. No. 1) at 5; Pet.'s Second Supp. Motion (Dkt. No. 9) at 4-5.

### BACKGROUND[2]

Nelson was convicted on February 16, 2000 after a jury trial, of Unlawful Possession of a Firearm by a Convicted Felon, 18 U.S.C. § 922(g), and sentenced by this Court to one hundred

---

[1] For printed publication in the Federal Reporter.

[2] The background presented herein assumes some familiarity with the criminal record.

twenty months in prison and three years supervised release. Resp.'s Memo. (Dkt. No. 4) Ex. 5 at 1-3, Ex. 3 at 3. The sentence included a two-level enhancement for obstruction of justice, a four-level enhancement for using or possessing a firearm, and a Criminal History Category of VI, Id. at 5-11, all of which were challenged on appeal by Attorney Michael Desautels, who also represented Nelson at trial. Pet.'s Motion (Dkt. No. 1) at 5. The Second Circuit issued its mandate on March 23, 2001 rejecting Nelson's sentencing challenges.[3] Nelson v. United States, 7 Fed. Appx. 15 (2d Cir. 2001). Following that decision, Nelson filed the instant petition on August 8, 2002, alleging ineffective assistance of counsel. Pet.'s Motion (Dkt. No. 1) at 1. His first ineffective assistance claim alleged that his attorney prevented him from testifying on his own behalf with a threat that he would walk out in the middle of the trial. Pet.'s Motion (Dkt. No. 1) at 4. His second ineffective assistance claim alleged that his attorney failed to challenge the credibility of the Government's primary witness Benitez. Id.

Almost two years later, on July 20, 2004, Nelson filed a supplemental § 2255 motion to vacate and amend his sentence under the recently decided Blakely v. Washington, 542 U.S. 296 (2004). Pet.'s First Supp. Motion (Dkt. No. 7) at 4. Specifically, Nelson asserted that two enhancements applied to him should have been deemed unconstitutional and his sentence should

---

[3] Apparently, while the Second Circuit's mandate issued on March 23, 2001, its certified mandate was not filed with the Clerk for the Northern District as of June 13, 2002. June 13, 2002 Order (Case No. 99-CR-184) (Dkt. No. 69). Nelson submitted a motion to the Court for an extension of time for filing his § 2255 motion and was advised in a letter that he need not seek an extension because the period of limitation had not yet tolled. Record of Case No. 99-CR-184 (Dkt. No. 68). Because the certified mandate had not yet been filed, it was believed that Nelson's conviction had not yet become final; this was not so, and Nelson had earlier been informed by his attorney of the Second Circuit's decision. June 13, 2002 Order (Case No. 99-CR-184) (Dkt. No. 69). On June 4, 2002, Nelson responded with another letter motion for a sixty-day extension and this was granted in light of the confusion. Id.

have been reduced to within a range of sixty-three to seventy-eight months. Id. The Court rejected that claim as Blakely related to Washington's Sentencing Reform Act, and denied Nelson's motion without prejudice to renew pending the outcome in Booker. Nelson v. United States, No. 99-CR-184, slip op. at 1-2 (N.D.N.Y. Aug. 12, 2004) (Dkt. No. 8). Once Booker was decided, Nelson filed a second supplemental § 2255 motion to vacate and amend his sentence in accordance with that case. Pet.'s Second Supp. Motion (Dkt. No. 9) at 1, 4.

## DISCUSSION

### I. Period of Limitation

A petitioner's collateral motion under 28 U.S.C. § 2255 is subject to a one-year period of limitation as introduced in the 1996 Antiterrorism and Effective Death Penalty Act ("AEDPA").[4] 28 U.S.C. § 2255. The AEDPA has been said to provide a gate-keeping function in postconviction cases, "to reduce the abuse of habeas corpus that results from delayed and repetitive filing [while]

---

[4] Section 2255 reads, in pertinent part:

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of–

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

preserving the availability of review when a prisoner diligently pursues [those remedies available to him] and applies for federal habeas review in a timely manner." Effective Death Penalty Act of 1995, H.R. REP. NO. 104-23, at 9 (1995). Ordinarily, as provided in § 2255, the one-year limitation period begins to toll after a petitioner's judgment becomes final. 28 U.S.C. § 2255. The Supreme Court has defined "final", for postconviction relief purposes, as (1) the date upon which a final decision is rendered in the Supreme Court or court of last resort, (2) the date of rejection of a petition for certiorari, or (3) "when the time for seeking such review expires."[5] Clay v. United States, 537 U.S. 522, 532 (2003); Freeman v. United States, 2005 WL 1498289, at *2 (E.D.N.Y. June 17, 2005). Since Nelson did not file a petition for certiorari after the Second Circuit's judgment on his appeal on March 23, 2001, his deadline for filing a timely § 2255 motion was June 21, 2002. SUP.CT. R. 13(1); United States v. Nelson, 7 Fed. Appx. 15 (2d Cir. 2001); Resp.'s Memo. (Dkt. No. 4) Ex. 8. Nelson's original § 2255 motion would have been time-barred, as it was filed on August 8, 2002, forty-eight days after the aforementioned deadline, Pet.'s Motion (Dkt. No. 1) at 1; however, this Court granted Nelson a sixty-day extension to file his motion in consideration of a delay in filing the Second Circuit's certified mandate with the Northern District. June 13, 2002 Order (Case No. 99-CR-184) (Dkt. No. 69).

*A. Jurisdiction to Extend the Period of Limitation and Equitable Tolling*

A district court does not have subject-matter jurisdiction to grant an extension to the one-

---

[5] The Rules of the Supreme Court of the United States provide:

"Unless otherwise provided by law, a petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort or a United States court of appeals (including the United States Court of Appeals for the Armed Forces) is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment." SUP.CT. R. 13(1).

year period of limitation under § 2255 unless (1) the moving party requests the extension upon or after filing an actual section 2255 motion, and (2) "rare and exceptional" circumstances warrant equitably tolling the limitations period.[6]  Green v. United States, 260 F.3d 78, 82-83 (2d Cir. 2001); United States v. Leon, 203 F.3d 162, 164 (2d Cir. 2000).  Nelson's motion for an extension did not articulate any cognizable claim under § 2255, Id. at 84, and no such claim was made until after the extension was granted, Record of Case No. 99-CR-184 (Dkt. No. 69); however, because the doctrine of equitable tolling applies here, Nelson's motion is not time-barred.  To establish equitable tolling, which applies only "in rare and exceptional circumstance[s]," a petitioner must demonstrate that (1) "extraordinary circumstances prevented him from filing his petition on time" and (2) he has "acted with reasonable diligence throughout the period he seeks to toll."  Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (citing Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir. 1996)).  The Supreme Court, in Baldwin County Welcome Center v. Brown, 466 U.S. 147 (1984) (citing Carlile v. South Routt School District RE 3-J, 652 F.2d 981 (10th Cir. 1981)), implied that equitable tolling may be appropriate in situations "where the court has led the plaintiff to believe that she had done everything required of her."  Brown, 260 F.3d at 151.  Such events constitute an "extraordinary circumstance" as contemplated in Smith.  This was true in Davidson v. United States, 2000 WL 1772656 (N.D.N.Y. Nov. 28, 2000) (McCurn, J.), where equitable tolling was applied to a petitioner who relied to his detriment on an assurance by the court that the AEDPA's period of limitation did not apply to him.  Id. at *1-2.  Similarly, Nelson relied first on a letter

---

[6] The exercise of federal jurisdiction under Article III of the Constitution 'depends on the existence of a case or controversy, and a federal court lacks the power to render advisory opinions." United States v. Leon, 203 F.3d 162, 164 (2d Cir. 2000) (citations omitted); Green, 260 F.3d at 82. Where a petitioner has not yet filed an actual § 2255 petition, there is no case or controversy to be considered.  Leon, 203 F.3d at 164.

advising him that the limitation period had not yet tolled; then, on this Court's assurance of a sixty-day extension when he filed his § 2255 petition forty-eight days after the original deadline. June 13, 2002 Order (Case No. 99-CR-184) (Dkt. No. 69); Pet.'s Motion (Dkt. No. 1) at 1. Because he filed within the period extended to him and submitted his motion for an extension before the original deadline expired, Nelson exhibited reasonable diligence within the period of equitable tolling now under consideration. Davidson, 2000 WL 1772656 at *2; Green v. United States, 260 F.3d at 86-87 (Kearse, J., dissenting in part and concurring in the judgment) ("equity need not be formulaic" but should be applied where petitioner filed an extension motion before his deadline and was denied by an erroneous decision of the court). Therefore, the Court recognizes Nelson's ineffective assistance claims as timely.

*B. Timeliness of Nelson's Supplemental Motion*

Nelson's supplemental motion challenging the constitutionality of his sentence under Booker was not submitted until February 2005, years after his original limitation period ended. Pet.'s Second Supp. Motion (Dkt. No. 9) at 1. However, the limitation period is suspended when a petitioner seeks to assert a right that has been newly recognized by the Supreme Court. 28 U.S.C. § 2255(3). In such a case, the one-year period does not begin to toll until that right is recognized by the Supreme Court if (1) the Court announces a new rule, which (2) is made retroactively applicable. Id.; Coleman v. United States, 329 F.3d 77, 82 (2d Cir. 2003).

The Supreme Court in Teague v. Lane, 489 U.S. 288 (1989), held that a new rule of constitutional law will not be given retroactive effect in cases on collateral review unless the rule is substantive or is a "watershed" rule of criminal procedure and affects "the fundamental fairness and

accuracy of the criminal proceeding."[7]  Saffle v. Parks, 494 U.S. 484, 494-495 (1990) (quoting Teague, 489 U.S. at 311; Guzman v. United States, 404 F.3d 139, 141 (2d Cir. 2005)).  Several recent decisions in this circuit have held that, though Booker announced a new rule of constitutional law,[8] it is not retroactively applicable on collateral review.  Guzman, 404 F.3d at 144; Green v. United States, 397 F.3d 101, 103 (2d Cir. 2005); Barrett v. United States, 2005 WL 1520849 at *9 (N.D.N.Y. June 27, 2005) (McAvoy, J.).  Though the result here is that Nelson's Booker claim does not fall under § 2255(3), it is unnecessary to decide the claim on timeliness grounds because he has no recourse under that rule regardless of whether or not it was timely.[9]

**II. Failure To Raise the Issue on Direct Appeal**

In its memorandum opposing Nelson's original § 2255 petition alleging ineffective assistance of counsel, the Government asserted that those claims were procedurally defaulted for

---

[7] The decision in Teague drew on Justice Harlan's view that it is "sounder, in adjudicating habeas petitions, generally to apply the law prevailing at the time a conviction became final than it is to seek to dispose of [habeas] cases on the basis of intervening changes in constitutional interpretation." Teague, 489 U.S. at 306 (quoting Mackey v. United States, 401 U.S. 667, 689 (1971) (opinion concurring in judgments in part and dissenting in part)).  Justice Harlan reasoned that retroactive application of new rules for cases on collateral review would upset an overriding interest in the finality of judgments and would not further the deterrent nature of habeas as an "incentive for trial and appellate courts throughout the land to conduct their proceedings in a manner consistent with established constitutional standards." Teague, 489 U.S. at 306 (quoting Desist v. United States, 394 U.S. 244, 262-263 (1969) (Harlan, J., dissenting)).

[8] "A case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." Teague, 489 U.S. at 301 (citation omitted).  The result in Booker was not dictated by the earlier decisions in Apprendi v. New Jersey, 530 U.S. 466 (2000) (facts used in raising a sentence above the statutory maximum, except those of a prior conviction, must be proved to a jury beyond a reasonable doubt) or Blakely v. Washington, 542 U.S. 296 (2004) (Washington State's sentencing scheme unconstitutional under Apprendi).

[9] Ordinarily, a district court must provide a petitioner notice and an opportunity to be heard before dismissing *sua sponte* a federal habeas petition for failure to comply with the one-year period of limitations.  Acosta v. Artuz, 221 F.3d 117, 125 (2d Cir. 2000).

failure to raise the issue on direct appeal. Resp.'s Memo. (Dkt. No. 4) at 4. The Government relied on the "cause and prejudice" test articulated in United States v. Frady, 456 U.S. 152 (1982), Wainright v. Sykes, 433 U.S. 72 (1977) and Davis v. United States, 411 U.S. 233 (1973), which states that a petitioner's failure to raise a claim on direct appeal is a procedural default, barring him from raising the claim on collateral review unless he can show cause excusing his procedural default and actual prejudice resulting therefrom. Resp.'s Memo. (Dkt. No. 4) at 4-5; Frady, 456 U.S. at 167-168; Campino v. United States, 968 F.2d 187, 189 (2d Cir. 1992). Two exceptions then existed to the cause and prejudice test for ineffective assistance claims when (1) a petitioner was represented on appeal by the same attorney that represented him at trial; or (2) the claim was not solely based on the record developed at trial. Billy-Eko v. United States, 8 F.3d 111, 115 (2d Cir. 1993); United States v. Wiggins, 971 F. Supp. 660 (N.D.N.Y. 1997) (McAvoy, J.). This set the groundwork for the proposition that "the failure to treat ineffective assistance of counsel claims on direct appeal . . . should not necessarily be treated similarly to a failure to raise other constitutional claims." Billy-Eko, 8 F.3d at 114. The Supreme Court extended this proposition in Massaro v. United States, 538 U.S. 500 (2003), which abrogated the Billy-Eko test and removed the procedural bar to any petitioner raising ineffective assistance claims on collateral review. Massaro, 538 U.S. at 509. The Supreme Court reasoned in Massaro that, in general, a § 2255 motion is preferable to direct appeal for deciding an ineffective assistance claim because to require a petitioner to raise the issue on direct appeal would restrict his ability to fully "develop the factual predicate for the claim," Id. at 504; it would also compel adjudication in "a forum not best suited to assess those facts." Id. In view of Massaro, Nelson's ineffective assistance claims were properly commenced as a § 2255 motion.

**III. Ineffective Assistance of Counsel**

The Sixth Amendment to the United States Constitution affords a defendant the right "to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. Strickland v. Washington, 466 U.S. 668 (1984) provides the appropriate test to determine whether counsel's professional obligations to his client have fallen short of that constitutional standard. Under the Strickland test, a petitioner must establish that counsel's performance fell below an objective standard of reasonableness within the profession "and that this deficiency prejudiced his defense". Purdy v. United States, 208 F.3d 41, 44 (2d Cir. 2000); Strickland, 466 U.S. at 687-688. Prejudice is shown when "there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different." United States v. Gordon, 156 F.3d 376, 379 (2d Cir. 1998). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

*A. Preventing Petitioner From Testifying on His Own Behalf*

Nelson asserts that his trial attorney prevented him from testifying on his own behalf by threatening to "walk out in the middle of the trial", Pet.'s Motion (Dkt. No. 1) at 5, and that he would not have been convicted had he been given that opportunity. Id. at 5. The Court, in deciding a § 2255 motion, must hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see also Machibroda v. United States, 368 U.S. 487, 495 (1962). While Nelson's allegations are facially implausible considering the apparent care with which his attorney has undertaken to represent him at trial and on appeal, they cannot be conclusively determined by the trial record and submissions. If true, Nelson may be entitled to relief because he was denied his constitutional right to testify on his own behalf.

See Rock v. Arkansas, 483 U.S. 44, 49-51 (1987); Brown v. Artuz, 124 F.3d 73, 74 (2d Cir. 1997). Even if this were the case, however, it is clear that Nelson was not prejudiced by this error for purposes of the second prong of the Strickland test. On the subject of prejudice, the record is determinative because it contains Nelson's proposed remarks as he would have articulated them at trial. Resp.'s Memo. (Dkt. No. 4) Ex. 2 at 21-31.

Essentially, Nelson contends that the testimonies of Benitez and other Government witnesses were incredible; that these stories were fabricated in order to satisfy a personal grudge against him and that Benitez lied to protect himself. Id. at 22, 23, 26. Nelson also challenges the Government's contention that a police officer saw him toss the firearm from his car because the weapon was not found for four days, Id. at 21, 25, and denies that he made any admission statements to the police. Id. at 25. Nelson's proposed testimony "provided no evidence of significance that is not wholly dependent on either his credibility or the incredibility of the witnesses against him." Rega v. United States, 263 F.3d 18, 22 (2d Cir. 2001). The jury reached its verdict not only from Benitez' testimony but, *inter alia*, from the testimony of police officers, ballistics reports and statements made by Nelson himself. Record of Case No. 99-CR-184 (Dkts. No. 58-61). This evidence was ultimately found by the jury to be credible. "Any probability of acquittal, therefore, must be based on an assessment that, if [the defendant] had testified, the jury would have credited his testimony, notwithstanding the substantial evidence against him." Rega, 263 F.3d at 22. The Court concludes that the jury would not have credited Nelson's testimony in light of the substantial evidence provided by the Government and the fact that Nelson's attorney already covered many of these arguments throughout the trial; those arguments not covered by Nelson's

attorney do not hint to any factual support.[10]  Moreover, it is likely that Nelson's testimony would have injured his case because of a previous outburst in the courtroom and his extensive criminal record, which no doubt would have been explored through cross-examination.  Resp.'s Memo. (Dkt. No. 4) at 7, Ex. 2 at 18.  Nelson's testimony, therefore, would not have helped, but may indeed have harmed his defense.

*B. Failure to Raise Various Arguments to Discredit Benitez*

Nelson asserts that his attorney was "ineffective for not raising that the witness 'Richard Benitez' testimony was unreliable and . . . was lying to get his pending state case dismiss[ed]."  Pet.'s Motion (Dkt. No. 1) at 4.  Without deciding whether a failure to raise such an argument satisfies the first prong of the Strickland test, the record conclusively shows that Nelson's claim is untrue.  Nelson's attorney aggressively and repeatedly challenged Benitez' credibility throughout the trial.  During cross-examination, he asked several questions in attempt to highlight Benitez' dishonesty and criminal history and reveal a motive in avoiding prison.  Record of Case No. 99-CR-184 (Dkt. No. 60) at 123-151.  Before the jury returned its verdict, he made a motion pursuant to Federal Rule of Criminal Procedure 29 for judgment of acquittal, on the theory that the Government rested "almost exclusively on the testimony of Richard Benitez" and that Benitez' testimony "was not worthy of belief as a matter of law".[11]  Record of Case No. 99-CR-184 (Dkt. No. 61) at 22-23. Nelson's attorney even raised these claims at the sentencing hearing.  Resp.'s Memo. (Dkt. No. 4)

---

[10]  Regarding those assertions already covered by Nelson's attorney, the Court is satisfied that the jury has considered these questions, particularly in assessing the credibility of the Government's witnesses.

[11] 11  This motion was ultimately denied by the Court as presenting an issue of fact for the jury.  Record of Case No. 99-CR-184 (Dk.t No. 61) at 24.

11

Ex. 2 at 10.  Nelson's claim must therefore be dismissed.

## CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Petitioner's motion to vacate, set aside, or alter his sentence is **DENIED**; and it is further

ORDERED that Petitioner's motion for this Court to hold an evidentiary hearing is **DENIED**; and it is further

ORDERED that the Clerk serve a copy of this Order on all parties by regular mail.

IT IS SO ORDERED.

.        DATED:        August 03, 2005
                       Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge